UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CR-84-HAB |
| | ) | |
| JULIUS T. MOORE | ) | |

**OPINION AND ORDER**

On August 16, 2019, Fort Wayne Police Department ("FWPD") officers were dispatched to a Walmart parking lot in reference to a disturbance with an armed party. A 911 caller reported that Defendant Julius Moore ("Moore") was threatening the caller with a firearm, although what exactly Moore was doing with that firearm evolved considerably over the course of the call. Officers apprehended Moore (not without incident) and conducted what the Government alternatively describes as a search supported by probable cause, a search incident to arrest, or an inventory search of Moore's vehicle. During that search, officers located a firearm in a locked glove compartment. Owing to Moore's prior felony conviction, he was charged with a violation of 18 U.S.C. § 922(g)(1).

Moore now seeks to suppress all physical evidence discovered in the vehicle as well as any statements he may have given following his detention. Moore asserts that his arrest and the search of his vehicle, both accomplished without a warrant, were in violation of the Fourth Amendment. The Government disagrees, arguing that the officers conducted a valid *Terry* stop with all subsequent action flowing naturally therefrom. Neither party has requested a hearing, so the Court views this matter as ripe for determination.

**A.      Factual Background**

In the early afternoon of August 16, 2019, Fort Wayne Dispatch received a 911 call from a complaining party ("D.B."). D.B. identified himself and provided a contact number. The purpose of D.B.'s call was to report that Moore had pointed a gun in his direction, although D.B. would quickly change the facts of his story to allege only that he had seen the butt of a gun in Moore's possession. D.B. described Moore's vehicle (a gold Chevrolet Impala with an Indiana University license plate) and gave his location (a Walmart parking lot on the north side of Fort Wayne). In response to D.B.'s call, FWPD officers were dispatched.

The first officer on the scene was FWPD officer Mason Wills. Prior to arriving at the scene, dispatch provided Officer Wills with a description of Moore's vehicle as well as the fact that Moore had multiple alerts on Spillman, a computerized data base that provides information on suspects, witnesses, and police reports. Officer Wills reviewed Spillman on his in-car computer, and saw that Moore had a prior felony conviction.

When Officer Wills arrived at the Walmart, he saw a gold Chevrolet Impala with one occupant leaving the parking lot. As Officer Wills turned to follow the Impala, he noticed that it had an Indiana University license plate. Officer Wills also witnessed the vehicle disregard two stop signs. Taking all this information into consideration, Officer Wills decided to conduct a "felony stop" of the vehicle. Prior to bringing his vehicle to a stop, Moore can be seen in Officer Wills' dashcam video leaning towards the passenger side of the vehicle. The Government describes this as a "furtive movement."

Moore brought his vehicle to a stop in the entrance to the parking lot of a local ice cream stand. While the Government claims that Moore "did not comply with Officer [Wills'] commands," the Court cannot agree. While Moore may not have moved with the alacrity Officer

2

Wills may have preferred, the dashcam shows Moore calmly complying with commands to place his hands over his head and walk backwards towards Officer Wills. Moore was quickly detained, handcuffed, and placed in the back of Officer Wills' police cruiser. No weapon was found on Moore's person.

Once Moore was in custody the responding officers began searching the passenger compartment of Moore's vehicle. The officers immediately spotted a black gun holster on the passenger seat.[1] At this point, the officers had received a report that Moore was armed, had found a holster in Moore's vehicle, but had found no firearm on Moore. Accordingly, the officers began to search Moore's vehicle in earnest for a firearm. Finding the glove box locked, one of the officers removed the keys from the vehicle's ignition and opened the glove box. Inside they found a Smith & Wesson handgun, loaded with a full magazine and a round in the chamber.

**B.      Legal Discussion**

Defendant raises multiple arguments regarding the legality of the stop and the search of his vehicle. In response, the Government offers several legal justifications. While the Court rejects many of the Government's proposed justifications for the officers' conduct, it nonetheless finds two issues dispositive which mandate the denial of Moore's motion. As set forth below, the Court finds that Officer Wills had reasonable suspicion to conduct a *Terry* stop of Defendant's vehicle and that the officers had probable cause to search Moore's glove compartment.

**1.      *The* Terry *Stop***

"To support an investigatory stop, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law."

---

[1] As the Government notes, Moore "claims there was not a holster on the passenger seat." (ECF No. 19 at 4). However, the Government has provided the Court with a photograph of the holster in the passenger seat of Moore's vehicle, and the officers can be heard discussing the holster in Officer Wills' dashcam video. As such, the Court concludes that the holster was found in the passenger seat as claimed.

*United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (quoting *Heien v. North Carolina*, 574 U.S. 54, 61 (2014)). "The standard takes into account the totality of the circumstances—the whole picture." *Id*. (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).

The Seventh Circuit has held that the suspicion that a defendant committed a traffic offense is sufficient to create reasonable suspicion to support an investigatory stop. *See*, *e.g*., *Shields*, 789 F.3d at 745 ("Because Mr. Shields does not dispute that he violated the Chicago Municipal Code by parking in the cross walk, the officers clearly had an objective basis to believe that he was violating the law."); *see also United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.").

Officer Wills' dashcam video shows Moore failing to stop at two different stop signs as Moore exited the Walmart parking lot. Both instances constituted violations of Indiana Code § 9-21-8-32, requiring vehicles to "stop at an intersection where a stop sign is erected . . . ." As such, Officer Wills plainly had reasonable suspicion to initiate an investigative stop of Moore's vehicle.

Moore does not meaningfully contest the basis for the initial stop. Rather, Moore asserts that the stop "became a full out arrest that lacked probable cause and violated Amendment IV." (ECF No. 19 at 4). While this is true in a general sense (Moore was ultimately arrested for being a felon in possession of a firearm), the Court cannot agree that Moore's argument is accurate for the relevant period of time; i.e., before the discovery of the handgun.

Subtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a de facto arrest. For example, probable cause may be required when police restraint is so intrusive that, while not technically an "arrest," it may be "tantamount" to an arrest. *Dunaway v. New York*, 442 U.S. 200, 212–16 (1979). Given the "endless variations in the

4

facts and circumstances," there is no "litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop" and becomes an arrest. *Florida v. Royer*, 460 U.S. 491, 506, (1983).

The reasonableness of an investigatory stop may be determined by examining: (1) whether the police were aware of specific and articulable facts giving rise to reasonable suspicion; and (2) whether the degree of intrusion was reasonably related to the known facts. In other words, the issue is whether the police conduct—given their suspicions and the surrounding circumstances—was reasonable. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). Since *Terry* was decided, the "permissible reasons for a stop and search and the permissible scope of the intrusion [under the *Terry* doctrine] have expanded beyond their original contours." *United States v. Chaidez*, 919 F.2d 1193, 1198 (7th Cir. 1990). The intervening period "has witnessed a multifaceted expansion of *Terry*," including the "trend granting officers greater latitude in using force in order to 'neutralize' potentially dangerous suspects during an investigatory detention," *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993). For better or for worse, the trend has led to the permitting of the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons and other measures of force more traditionally associated with arrest than with investigatory detention.

When effecting a *Terry* stop, which is always a stop made at "close range," police officers must make a quick decision about how to protect themselves and others from possible danger. They are not necessarily required to "adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." *Michigan v. Long*, 463 U.S. 1032, 1052 (1983); *United States v. Boden*, 854 F.2d 983, 994 (7th Cir. 1988). A court in its assessment "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases

5

the court should not indulge in unrealistic second-guessing." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

The mere use or display of force in making a stop does not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety. *United States v. Greene*, 783 F.2d 1364, 1367–68 (9th Cir. 1986). "To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of *Terry v. Ohio*." *United States v. Maslanka*, 501 F.2d 208, 213 n. 10 (5th Cir. 1974). *See*, *e.g.*, *United States v. Hensley*, 469 U.S. 221, 235 (1985) (police officers were "well within the permissible range in the context of suspects who are reported to be armed and dangerous" in approaching, with their guns drawn, a vehicle they had stopped); *United States v. Serna–Barreto*, 842 F.2d 965, 968 (7th Cir. 1988) (officers' drawing guns did not automatically escalate investigatory stop into an arrest where officers' safety required such a measure). *Cf. United States v. Novak*, 870 F.2d 1345 (7th Cir. 1989) (*Terry* stop in an airport became an arrest; one officer pointed her gun at suspect as six to nine officers stopped the two defendants, who were not believed to be armed or dangerous and were not in a car and offered no resistance).

Here, the officers had been advised by dispatch that Moore had threatened another individual with a firearm, either by pointing the firearm or simply displaying its presence. Officer Wills also viewed Moore make a motion toward the passenger side of Moore's vehicle immediately prior to the stop. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. Allowing police to draw their weapons may be reasonable if the "suspect is thought to be armed, or even when he is thought to be involved in criminal activity in which the use of weapons is commonplace." *United*

6

*States v. Aurelio Lechuga*, 925 F.2d 1035, 1040 (7th Cir. 1991). Certainly, on the basis of the 911 call, the officers could reasonably believe that Moore was armed. As such, Officer Wills' act of drawing his firearm did not exceed the scope of the investigative stop.

In addition to drawing his gun, Officer Wills also ordered Moore to the ground, handcuffed him, and placed Moore in the back of Officer Wills' squad car. It is permissible in some *Terry* stops to require a suspect to leave a car and it may even be acceptable to make him lie prone on the ground without transforming an investigatory stop into an arrest. *See*, *e.g.*, *United States v. Jacobs*, 715 F.2d 1343, 1346 (9th Cir. 1983). "Admittedly, being held at gunpoint by the police would be a powerful incentive for most persons neither to flee nor resist an impending investigation. Such a situation is not, however, equally inspirational for everyone." *United States v. Sanders*, 994 F.2d 200, 207 (5th Cir. 1993). When a suspect is considered dangerous, requiring him to lie face down on the ground is the safest way for police officers to approach him, handcuff him and finally determine whether he carries any weapons. *See Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991) (requiring suspects to lie on the ground was an "additional method" that the officer used "in conjunction with his drawn gun" to subdue suspects after making *Terry* stop). Thus, a "lying prone" requirement may be within the scope of an investigative detention.

Relying only on the guns pointed at a suspect may not, in certain circumstances, ensure the officers' safety or the safety of innocent bystanders. *Sanders*, 994 F.2d at 208. *See also United States v. Perdue*, 8 F.3d 1455, 1463 (7th Cir. 1993) (noting "trend allowing police to use handcuffs or place suspects on the ground during a *Terry* stop") (collecting cases); *United States v. Smith*, 3 F.3d 1088 (7th Cir. 1993) (handcuffs). Neither does handcuffing in all circumstances transform a stop into an arrest. In fact, handcuffing—once highly problematic—is becoming quite acceptable in the context of a *Terry* analysis. *Tom v. Voida*, 963 F.2d 952, 957–958 (7th Cir. 1992) (upholding

use of handcuffs in investigatory stop); *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir. 1989) (handcuffing was permissible as part of a *Terry* stop where police dispatch indicated defendants were in possession of several small weapons). In addition, it is not necessarily improper to detain suspects in a police car during some kinds of investigatory stops. *See*, *e.g*., *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1176–78 (7th Cir.1987) (suspect placed in police squad car during investigation).

Having reviewed the entirety of Officer Wills' dashcam video, the Court concludes that the use of force in this case did not exceed that necessary for an investigative stop. Again, the 911 call reasonably could have led Officer Wills to fear that Moore was armed when he exited his vehicle. Ordering Moore to the ground and handcuffing him was reasonable given this factual scenario. When no firearm was found on Moore's person, it was reasonable for Officer Wills to place Moore in the back of the squad car to limit Moore's access to his vehicle and the firearm potentially contained therein. Given the totality of the facts known to Officer Wills at the time of his encounter with Moore, the Court finds Officer Wills' conduct to be consistent with a *Terry* stop and will not engage in unreasonable second-guessing of that conduct.

**2.**     *Probable Cause to Search*

Having addressed the stop, the only remaining issue is the legality of the search. Warrantless searches are per se unreasonable under the Fourth Amendment unless they fall within "a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted). At issue here is the automobile exception. First recognized in *Carroll v. United States*, 267 U.S. 132 (1925), and clarified in *United States v. Ross*, 456 U.S. 798 (1982), the automobile exception permits the police to search a vehicle if there is probable

cause to believe it contains evidence of criminal activity. *Gant*, 556 U.S. at 347. The authority to search encompasses any area of the vehicle where evidence of the crime might be found. *Id*.

"[T]he scope of the warrantless search authorized by th[e automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant." *Ross*, 456 U.S. at 825. So if there is probable cause to search a vehicle for contraband or evidence of a crime, a police officer may search containers within the vehicle that could hold such evidence. *See*, *e.g.*, *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (search for evidence relating to ownership of car after its theft was reported); *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010) (search for evidence of drug transactions seen during surveillance of defendant).

"Probable cause exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Edwards*, 769 F.3d at 514 (internal quotation marks omitted). This is an objective determination made without regard to an officer's motive, but with an eye toward additional knowledge the officer may have had as a result of his training and experience. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006).

On this point, the Court finds *United States v. Charles*, 801 F.3d 855 (7th Cir. 2015), to be dispositive. There, police received a 911 call reporting a man approaching the vehicle of another individual in a threatening manner and with a gun in his waistband. The caller gave a description of the man, his clothing, and his location. Officers arrived on the scene minutes later and saw a man matching the description given by the caller emerging from a vehicle. That individual, the defendant, was detained and a search of his vehicle found a green gun case. Upon opening the case, the officers found a loaded semiautomatic pistol and an extra clip of ammunition. The defendant, a felon, was arrested and charged under 18 U.S.C. § 922(g)(1). *Charles*, 801 F.3d at

9

858. The defendant sought to suppress the gun and his statements to police officers, claiming that the officers lacked probable cause to search the vehicle. *Id*. at 858–59.

On the facts in *Charles*, the Seventh Circuit had little trouble affirming the district court's denial of the defendant's motion.

> Here, the dispatcher's report of Summerise's 911 call establishes beyond dispute that Sergeant Baranowski had probable cause to believe that Charles was carrying or had very recently carried a handgun. At the time, Chicago comprehensively banned handgun possession, and Illinois prohibited carrying a gun in public unless it was "unloaded and enclosed in a . . . container."
>
> The dispatcher reported the gist of Summerise's 911 call and directed responding officers to look for "a person with a gun" in the alley at the West Howard Street address. The dispatcher also gave a detailed description of the suspect and reported that the caller, Summerise, was in the alley and "says that she is afraid." Just two minutes later Sergeant Baranowski arrived on the scene and saw Charles, who matched the description, emerging from a car parked at the entrance to the alley. A reasonable officer would have considered it likely that Charles had stashed the gun—evidence of these crimes—in his car.
>
> * * * *
>
> Here, there was ample probable cause to believe that Charles had violated the Chicago ordinance and Illinois statute and that evidence of those crimes could be found in his car. Accordingly, the search of the car was not unreasonable.

*Id*. at 860–61 (citations omitted).

The facts of this case are not meaningfully different from *Charles*. Here, the 911 caller provided Moore's name, described Moore's vehicle, gave Moore's location, and advised that Moore possessed a firearm. Officer Wills was able to determine, via his in-car Spillman system, that Moore was a convicted felon. Accordingly, Moore's possession of a firearm was in violation of 18 U.S.C. § 922(g)(1), which prohibits any person convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing any firearm or ammunition. Officer Wills arrived at the reported location within minutes, and spotted a vehicle matching the description given by the 911 caller. When officers found that Moore had no firearm on him and

further discovered a holster in Moore's vehicle, a reasonable officer would have considered it likely that Moore had stashed the gun—evidence of a crime—in his vehicle. The officers, then, had ample probable cause to believe that Moore had violated 18 U.S.C. § 922(g)(1) and that evidence of that crime would be found in Moore's car. The warrantless search of the vehicle was legal.

Contrary to Moore's arguments, the legality of the search does not turn on whether the glove compartment was locked. "Where law enforcement agents have probable cause to search a vehicle, they may search all areas in the vehicle in which contraband or evidence of criminal activity might be found, including closed containers, packages, compartments, and trunks." *United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009). It was reasonable for the officers to believe that a firearm could be found in the glove compartment of a vehicle. Therefore, the officers could lawfully search the glove compartment.

**C.     Conclusion**

For the foregoing reasons, Moore's Motion to Suppress (ECF No. 19) is DENIED.

SO ORDERED on June 15, 2020.

                                                  s/ Holly A. Brady
                                                  JUDGE HOLLY A. BRADY
                                                  UNITED STATES DISTRICT COURT